IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No.: 1:23-CV-01071-PAB-STV**

D.B.. and
G.H.:

Plaintiffs,

v.

GRIFFITH CENTERS FOR CHILDREN INC., A Colorado Corporation;
TANIA SOSSI, an Individual;

Defendants.

___

**REPLY RE: DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND JURY DEMAND PURSUANT TO F.R.C.P. 12(b)(6)**
___

COME NOW the Defendants, Griffith Centers for Children Inc., a Colorado Corporation and Tania Sossi ("Defendants") by and through their attorneys, Treece Alfrey Musat P.C., and hereby reply to Plaintiffs' Response to their Motion to Dismiss and in support thereof, state as follows:

## INTRODUCTION

A. **Plaintiffs failed to state a claim for relief under Title IX and make conclusory allegations and arguments that are not supported by legal authority.**

Plaintiffs argue that Defendants made four perfunctory arguments in their Motion to Dismiss, but misconstrued the arguments made by Defendants[1] and failed to show how any of the alleged arguments were perfunctory in any way. Plaintiffs go on to make their own perfunctory arguments in their response because they cite to three separate legal authorities but

---

[1] Plaintiffs alleged that Ms. Oliva was a residential staff member and "school staff member," not a teacher, see Introduction of Complaint and ¶33. Defendants argued that Plaintiffs failed to plead facts to support their claim that they were subjected to discrimination under any educational program.

make no "effort at developed argumentation" as to how they apply here. *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004). Contrary to Plaintiffs' allegations, Defendants' arguments are not perfunctory because they are supported by legal authority and reference the inadequacy of Plaintiffs' Complaint. Accordingly, the Court should not deny Defendants' Motion to Dismiss on this basis.

> **i. Plaintiffs failed to plead facts to support their conclusory allegation that "Defendant GCC received federal financial assistance" and provide no legal authority to support their claim that it is a "well-plead factual allegation."**

Defendants argued, under the *Iqbal* pleading standard, that Plaintiffs' allegation that "[a]t all relevant times, Defendant GCC received federal financial assistance" (Complaint at ¶ 156) is an unsupported legal conclusion and recital of an element of Plaintiffs' Title IX claim. *Ashcroft v. Iqbal*, 556 U.S. 622, 673 (2009). In their response, Plaintiffs argue that the "allegation is a well-plead factual allegation that must be accepted as true," but do not cite any legal authority or facts to support their argument. Rather, Plaintiffs argue (1) that federal funding does not need to be earmarked for Title IX to satisfy the element and (2) that Defendant GCC "clearly avails itself of federal funding within the meaning of Title IX," relying on two exhibits that were not attached or referenced in the Complaint – GCC's 2019 IRS filings and Colorado's Medicaid Budget for 2019-2020.

Defendants did not argue that federal funding must be earmarked for Title IX, only that Plaintiffs failed to support their allegation that Defendant GCC received federal financial assistance.[2] Plaintiffs "may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss." *In re Qwest Commc'ns Int'l, Inc.*, 369 F. Supp. 2d 1178, 1203

---

[2] Notably, the plaintiff in *Karanik* alleged that the defendant received a PPP loan and the court held that the loan qualified as federal financial assistance. Karanik v. Cape Fear Acad., Inc., 608 F. Supp. 3d 268, 277 (E.D.N.C. 2022). Here, Plaintiffs did not identify any form of federal financial assistance that GCC received that would subject them to a claim under Title IX.

(D. Colo. 2004). Therefore, Plaintiffs' Title IX claim should be dismissed because Plaintiffs failed to plead facts in the Complaint to show that "Defendant GCC received federal financial assistance" and it is a conclusory allegation without support.

### ii. Plaintiffs did not allege sex-based discrimination.

Plaintiffs argue that the alleged sexual assaults are plainly acts of discrimination under well-settled law, but Plaintiffs again fail to support their argument with any attempt to apply the cited legal authority to the facts alleged in the Complaint. The Court in *Gebser* noted that a teacher's sexual misconduct is reprehensible as it <u>undermines the purposes of the educational system</u> and that a student suffers extraordinary harm when subjected to sexual harassment and abuse <u>by a teacher</u>. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) (emphasis added). In *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, the court held that a student's sexual assault <u>may be</u> an act of sex discrimination where it is "so severe, pervasive, and objectively offensive that it deprives the victims of equal access to educational resources, opportunities, or benefits. *Id.* at 1308 (emphasis added); *see also Day v. Career Bld. Acad. Acad.*, No. 18-cv-00837-RM-KMT, 2021 WL 4260797, at *6 (D. Colo. Sept. 20, 2021).

The alleged actions of Ms. Oliva, who was not a school official, do not "undermine the purposes of the educational system" and Plaintiffs have not plead facts sufficient to show the alleged abuse is "so severe, pervasive, and objectively offensive that it deprived them of equal access to any educational resources, opportunities, or benefits". Ms. Oliva was not a teacher and did not work in the GCC Additionally, the defendants and sexual harassers in the legal authority cited by Plaintiffs admitted to or were charged with sexually abusing or harassing the plaintiffs, but here, Plaintiffs have provided no facts to support that they were actually subjected to any discrimination on the basis of their sex.

### iii. Plaintiffs fail to show that Ms. Oliva's alleged abuse is covered by Title IX.

Plaintiffs argue that, under the court's ruling in *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999), Defendant GCC is liable for Ms. Oliva's alleged abuse because it exhibited control over both Ms. Oliva and the context in which the abuse occurred. However, the rule in *Davis* is only applicable to show whether a plaintiff was "subjected" or "exposed" to harassment because of an entity's "deliberate indifference;" it does not establish that an entity is liable under Title IX. *Id.* at 645. A recipient of federal funding "may be liable for subjecting their students to discrimination where the recipient is deliberately indifferent to known acts of … sexual harassment and the harasser is under the school's disciplinary authority." *Id.* at 646-47 (emphasis added).

Here, Plaintiffs have not pled facts to show that Defendant GCC was deliberately indifferent to any known acts of sexual harassment, and Defendant GCC's alleged control over Ms. Oliva and the context in which the alleged harassment occurred does not establish that Defendant GCC is liable under Title IX. Plaintiffs fail to show how Ms. Oliva's actions fall under the GCC School's disciplinary authority. Plaintiffs admit that Ms. Oliva was not a teacher and that the GCC School is a separate building and identified as separate and distinct from Defendant GCC (the residential facilities). *See* ¶¶10, 11 and 13 of Plaintiffs' Complaint. Plaintiffs' Complaint includes that Ms. Olivia's alleged abuse occurred in the residential facility, when Ms. Oliva was residential staff for TSP, and later residential staff for Avalanche. See Plaintiffs' Complaint, ¶¶35-38 and 41, 45-48, 52-55, 69, 74-76, 79, 82-83, 85-87, 91-94, . Again, the allegations of the alleged sexual harassment/acts occurred in residential facilities, via phone, or at night outside of GCC. There are no allegations of Ms. Oliva engaging in sexual harassment/act with Plaintiffs in the GCC School or in the role of a school staff member.

Therefore, Plaintiffs have failed to state a claim for relief against Defendant GCC and their Title IX claim should be dismissed pursuant to F.R.C.P. 12(b)(6).

### iv. Plaintiffs fail to show that Defendant GCC had knowledge and was deliberately indifferent to the alleged harassment.

Plaintiffs argue that GCC had knowledge because they allege that (1) F.B. told Ms. Cantwell he was in a sexual relationship with Ms. Oliva, Ms. Cantwell reported it to Ms. Lockett, and Ms. Lockett reported it to Ms. Sossi; (2) Ms. Cantwell allegedly spoke with other residents and learned that Ms. Oliva's sexual abuse was "common knowledge" and reported it Ms. Lockett and Ms. Sossi; and (3) G.H. told Ms. Cantwell that he and Oliva had "wrestled around" in the park, and G.H. allegedly agreed to speak with Ms. Sossi about it but did not because Ms. Cantwell's employment was terminated. *See Complaint*, at ¶¶ 117-53.

Plaintiffs' allegations are conclusory allegations that are not supported by any facts to show that Defendant GCC had actual knowledge and was deliberately indifferent to any known acts of sexual harassment. A report that G.H. had "wrestled around" with Ms. Oliva and an allegation that D.B.'s sexual relationship with Ms. Oliva was "common knowledge" at GCC are insufficient to show that Defendant GCC had actual knowledge of "a substantial risk of abuse to students." Further, the Complaint, if taken as true, contains several allegations that show Ms. Oliva was appropriately disciplined and supervised.[3] Accordingly, the Court should dismiss Plaintiffs' Title IX against Defendant GCC because Plaintiffs fail to plead facts to support their conclusory allegations that Defendant GCC had actual knowledge and was deliberately indifferent to the alleged discrimination.

---

[3] Plaintiffs allege that Ms. Oliva was placed on administrative leave for several weeks following an alleged lap-sitting incident between her and D.B. and that Ms. Oliva allegedly told G.H. that they needed to be more careful. *See* Comp., ¶¶ 44, 97, 109.

**B. Plaintiffs' Fourteenth Amendment claims should be dismissed because Plaintiffs fail to support their allegations that Defendants are state actors who were deliberately indifferent to Plaintiffs' constitutional rights.**

Plaintiffs argue that they successfully stated a substantive due process claim against Defendants because Defendant GCC is a state actor that caused Plaintiffs' alleged constitutional injuries by failing to adequately supervise or timely discipline Ms. Oliva. However, Plaintiffs Arguments are conclusory statements that are not supported by Plaintiffs legal authority.

   i. **Plaintiffs fail to show that GCC is a state actor.**

Plaintiffs argue that Defendant GCC is a state actor because there is a sufficient nexus between the alleged conduct and contracted-for-services and Plaintiffs were involuntarily placed at GCC, but Plaintiffs do not cite any legal authority to support their argument that the two factors are determinative of state action. In *Milonas*, the defendants were operators of a private school established for the primary purpose of educating behaviorally troubled youths that also operated as a mental health, correctional, and detention facility. In contrast, Defendant GCC operates as a Residential Child Care Facility with a primary purpose to provide behavioral health services to youths and operates in part as a school. Further, the involuntary placement of the plaintiffs in *Milonas* was just one of several factors the court considered as weighing in favor of state action, and the ultimate issue is whether the state has exercised coercive power or significant encouragement such that the alleged infringement is fairly attributable to the state. *Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982). Plaintiffs have failed to plead facts sufficient to show that the alleged acts of Defendants GCC or Ms. Sossie were "coerced" or "significantly encouraged" by the State, and their Fourteenth Amendment substantive due process claim should be dismissed.

### ii. Plaintiffs fail to state a claim against Defendant GCC because they failed show that a municipal policy or custom was the moving force behind Plaintiffs alleged constitutional injuries.

Plaintiffs argue that Defendant GCC's alleged failure to adequately supervise or investigate Ms. Oliva was the "policy or custom" that was the moving force behind the alleged violations of Plaintiffs' constitutional rights.[4] Plaintiffs argue that Defendant GCC's liability can be established under both a failure-to-supervise theory and under a failure-to-train theory, but do not argue how either theory applies or support their claim that Defendants alleged failure to supervise Ms. Oliva was the "moving force behind the alleged constitutional violations." Further, Plaintiffs allege that had Ms. Oliva been timely investigated and disciplined by Defendant GCC, she would not have been able to continue her alleged sexual encounters with plaintiffs, but allegations in the Complaint rebut this conclusion. Specifically, the Complaint alleges that Ms. Oliva and Plaintiffs continued with their sexual encounters after Ms. Oliva was placed on administrative leave, was no longer allowed to take boys on walks alone, and told G.H. that they needed to be more careful; these facts, taken as true, clearly show that Ms. Oliva continued her alleged sexual abuse of Plaintiffs in spite of the alleged supervision and disciplinary action taken against her by Defendant GCC.

Therefore, Plaintiffs' second claim for relief should be dismissed because Plaintiffs failed to support their conclusory allegation that Defendant GCC's alleged failure to supervise Ms. Oliva was the moving force behind the alleged constitutional violations and failed to show that Defendants were deliberately indifferent to Plaintiffs' constitutional rights.

---

[4] Contrary to Plaintiffs' note in their response, the Defendants dispute that Plaintiffs did indeed suffer constitutional violations, as Defendants expressly denied that the alleged sexual abuse and harassment occurred in their Answer to Plaintiffs Complaint and argued that Plaintiffs failed to provide any support for the existence of any custom, policy, or practice that was the moving force behind the alleged constitutional violations in their Motion to Dismiss.

    iii. **Plaintiffs fail to state a claim against Defendant Sossi because they fail to show that the alleged constitutional injury was caused by Ms. Sossi's deliberate indifference.**

Plaintiffs argue that Ms. Sossi's active refusal to investigate Ms. Oliva was deliberate indifference to the inevitable constitutional injury Plaintiffs suffered, but Plaintiffs fail to plead facts to show they actually suffered any constitutional injury or that Ms. Sossi deliberately failed to act when presented with the alleged risk of harm.  As previously argued, Plaintiffs' Complaint does not conclusively establish that Plaintiffs suffered the alleged constitutional injury and it contains several allegations that, if taken as true, show that some level of action was taken in response to Ms. Oliva's alleged sexual abuse and that the Defendants were not deliberately indifferent.  Accordingly, Plaintiffs fail to state a plausible substantive due process claim against Defendant Sossi and the claim should be dismissed.

  C. **Plaintiffs third claim for relief should be dismissed because it is an unconstitutional retroactive application of C.R.S. § 13-20-1201.**

The Colorado Supreme court held that the "CSAAA is unconstitutionally retrospective to the extent that it permits a victim to bring a claim for sexual misconduct based on conduct that predates the Act and for which previously available causes of action were time-barred." *Aurora Pub. Sch. v. A.S.*, 2023 CO 39, ¶ 53 (June 20, 2023).  The alleged sexual misconduct in this case predates the act, as Plaintiffs allege the events occurred in late 2019 into early 2020, and the statute was enacted in 2021.  Accordingly, Plaintiffs' claim for relief under the act should be dismissed as a matter of law.

  D. **Plaintiffs' fifth and sixth claims for negligence and negligent infliction of emotional distress should be dismissed because they are subsumed by Plaintiffs' claim under Colorado's premises liability act.**

Plaintiffs argue that the court should not dismiss their Negligence and Negligent Infliction of Emotional Distress claims because Defendants denied landowner status in their

Answer to the Complaint. However, the law is well established that the PLA provides the exclusive remedy for a person making a claim against a "landowner" in Colorado. *See Vigil v. Franklin*, 103 P.3d 322, 326 (Colo. 2004). Accordingly, Plaintiffs' claims for negligence and negligent infliction of emotional distress are subsumed by the Colorado premises liability statue and must be dismissed as a matter of law.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, Defendants Griffith Centers for Children Inc. and Ms. Sossi request this Honorable Court to grant their Motion to Dismiss Plaintiffs' first, second, third, fifth, and sixth claims for relief, pursuant to F.R.C.P. 12(b)(6).

Respectfully submitted this 11th day of August 2023.

        Treece Alfrey Musat P.C.

        */s/Paul E. Collins*
        Paul E. Collins
        Lauren M. Getsie
        633 17th Street, Suite 2200
        Denver, Colorado 80202
        (303) 292-2700
        (303) 295-0414 (facsimile)
        Email: pcollins@tamlegal.com
        Email: lgetsie@tamlegal.com
        *Attorneys for Defendants, Griffith Centers for Children Inc., a Colorado Corporation and Tania Sossi*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 11th day of August 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record to their CM/ECF-registered email addresses:

Azra Taslimi - at@rmlawyers.com
Matthew J. Cron- mc@rmlawyers.com
RATHOD MOHAMEDBHAI, LLC
*Attorneys for Plaintiff*

                                              */s/Victoria Reimche*
                                              Victoria Reimche